1

2

3

4

5          UNITED STATES DISTRICT COURT
         EASTERN DISTRICT OF WASHINGTON
6

7   FRANCES CONNER,                    No.  4:15-CV-5051-EFS

8                    Plaintiff,
                                       **ORDER GRANTING DEFENDANT'S**
9            v.                        **SUMMARY-JUDGMENT MOTION AND**
                                       **DENYING PLAINTIFF'S SUMMARY-**
10  CAROLYN W. COLVIN, Commissioner of **JUDGMENT MOTION**
    Social Security,
11
                     Defendant.
12

13       Before the Court, without oral argument, are cross-summary-

14  judgment motions. ECF Nos. 13 & 15. Plaintiff Frances Conner appeals

15  the Administrative Law Judge's (ALJ) denial of benefits.  ECF No. 3.

16  Ms. Conner contends the ALJ committed reversible error by finding her

17  testimony—as well as that of Dr. Cheryl Hipolito and Dr. Penny

18  Stringer—not credible. ECF No. 13.  Ms. Conner requests the Court

19  remand this case with an instruction to grant her an immediate award

20  of benefits.  ECF No. 13. The Commissioner of Social Security

21  ("Commissioner") asks the Court to affirm the ALJ's decision. ECF No.

22  15. The Court has reviewed the administrative record and the parties'

23  briefing. For the reasons set forth below, the Court affirms the ALJ's

24  decision, denies Plaintiff's motion, and grants the Commissioner's

25  motion.

26  /

ORDER GRANTING DEFENDANT'S SUMMARY-JUDGMENT MOTION AND DENYING
PLAINTIFF'S SUMMARY-JUDGMENT MOTION - 1

**A.    Jurisdiction**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

**B.    Standard of Review**

A district court's review of a Commissioner's final decision is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla but less than a preponderance." *Id*. (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id*.

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115

(quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**C.   Disability Determination: Five-Step Sequential Evaluation Process**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. 42 U.S.C. § 1382c(a)(3). First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Id.* § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B). The decision-maker uses a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

Step one assesses whether the claimant is engaged in substantial gainful activities. *Id.* § 416.920(a)(4)(i). If the claimant is engaged in substantial gainful activities, the claimant is not disabled and benefits are denied. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not engaged in substantial gainful employment, the decision-maker proceeds to step two.

Step two assesses whether the claimant has a medically severe

impairment, or combination of impairments, which significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not, the disability claim is denied. If the claimant does, the evaluation proceeds to the third step.

Step three compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404 Subpt. P App. 1, 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment does not, the evaluation proceeds to the fourth step.

Step four assesses whether the impairment prevents the claimant from performing work he has performed in the past by examining the claimant's residual functional capacity. *Id.* §§ 404.1520(e), 416.920(e). If the claimant is able to perform the claimant's previous work, the claimant is not disabled. If the claimant cannot perform this work, the evaluation proceeds to the fifth step.

Step five, the final step, assesses whether the claimant can perform other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see Bowen v. Yuckert*, 482 U.S. 137 (1987). If the claimant can, the disability claim is denied. If the claimant cannot, the disability claim is granted.

The burden of proof shifts during this sequential disability analysis. The claimant has the initial burden of establishing

1  entitlement to disability benefits under steps one through four.

2  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The burden then

3  shifts to the Commissioner to show 1) the claimant can perform other

4  substantial gainful activity, and 2) that a "significant number of

5  jobs exist in the national economy," which the claimant can perform.

6  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

7  **D.   Procedural History and ALJ Findings[1]**

8       On February 22, 2010, Ms. Conner filed an application for

9  supplemental security income, alleging a disability onset of the same

10 date. Transcript of Record (Tr.) at 21 & 71. Ms. Conner's claim was

11 denied initially and upon reconsideration. Tr. at 73 & 82. Ms. Conner

12 requested a hearing before an ALJ, which was held on November 17,

13 2011. Tr. at 38 & 84. On November 28, 2011, the ALJ rendered a

14 decision denying Ms. Conner's claim. Tr. at 18–31. On April 16, 2013,

15 after the Appeals Council denied a review of the ALJ's decision, Ms.

16 Conner appealed the ALJ's decision to this Court. Tr. at 1 & 290. On

17 May 20, 2014, the U.S. District Court for the Eastern District of

18 Washington overturned the ALJ's decision and remanded for further

19 proceedings. Tr. at 300–332. Upon remand, the ALJ held two additional

20 hearings on January 7, 2015, and March 19, 2015. Tr. at 240 & 277. On

21 April 16, 2015, the ALJ rendered a decision again denying Ms. Conner's

22 claim. Tr. at 215–233.

23      At step one, the ALJ found Ms. Conner had not engaged in

24

25 [1] The facts are only briefly summarized. Detailed facts are
   contained in the administrative hearing transcript, the ALJ's

26 decision, and the parties' briefs.

ORDER GRANTING DEFENDANT'S SUMMARY-JUDGMENT MOTION AND DENYING
PLAINTIFF'S SUMMARY-JUDGMENT MOTION - 5

substantial gainful activity since February 22, 2010. Tr. at 220.

At step two, the ALJ found Ms. Conner had medically severe impairments, including diabetes mellitus, degenerative disc disease, and obesity. Tr. at 220. The ALJ found Ms. Conner's hypertension, hyperlipidemia, and polycystic ovarian syndrome caused only a minimal effect on her basic work-related activities. Tr. at 221.

At step three, the ALJ found none of Ms. Conner's severe medical impairments meet or equal listed impairments, and that the Ms. Conner is not presumed disabled. Tr. at 222.

At step four, the ALJ found Ms. Conner could not return to her previous work as a fast-food cashier. Tr. at 228.

At step five, the ALJ found Ms. Conner could perform other work in the national economy as long as the work was sedentary. Tr. at 228–229 & 285–287. Based on Ms. Conner's age, education, work experience, and residual functional capacity, the ALJ found Ms. Conner could work as a Production Assembler, Electronics Worker, Hand Bander, Ticket Seller, and Telephone Quotations Clerk. Tr. at 229.

Ms. Conner did not request a review from the Appeals Council, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210. On June 18, 2015, Ms. Conner filed this lawsuit appealing the ALJ's decision. ECF No. 3.

**E.   Analysis**

Plaintiff raises the following issues for this Court's review of the Commissioner's final decision:

1) Whether the ALJ improperly discredited Ms. Conner's testimony

1   regarding the intensity, persistence and limiting effects of her
2   symptoms.

3       2) Whether the ALJ improperly discredited the testimony of Ms.
4   Conner's treating physicians.

5       3) Whether the Court should remand with instructions to grant
6   Ms. Conner immediate award.
7   The Court evaluates each issue in turn.

8       **1.   Ms. Conner's Testimony**

9       Before discrediting a claimant's testimony, the "ALJ must engage
10  in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036
11  (9th Cir. 2007). First, the ALJ must determine whether the claimant
12  has presented objective medical evidence of an underlying impairment
13  "which could reasonably be expected to produce the pain or other
14  symptoms alleged." *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344
15  (9th Cir. 1991)). The claimant need not provide "objective medical
16  evidence of the pain or fatigue itself, or the severity thereof" to
17  the ALJ. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)
18  (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).
19  Second, if there is no evidence of malingering, the ALJ must accept
20  the claimant's testimony about the severity of the symptoms, unless it
21  offers "specific, clear and convincing reasons" to reject the
22  testimony. *Smolen*, 80 F.3d at 1282. When discrediting a claimant's
23  testimony, the ALJ "must be sufficiently specific to allow a reviewing
24  court to conclude the adjudicator rejected the claimant's testimony on
25  permissible grounds and did not arbitrarily discredit a claimant's
26  testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493

(9th Cir. 2015) (quoting *Bunnell*, 947 F.2d at 345–346.) An ALJ is "not required to believe every allegation of disabling pain" or other impairments. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). An ALJ may consider the claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and inadequately explained failure to seek treatment or follow a prescribed course of treatment. *Id.*

Defendant argues that an ALJ only needs substantial evidence to discredit a claimant's testimony, but this argument is in error. ECF No. 15. As Plaintiff argues, Defendant's reasoning was expressly rejected by the Ninth Circuit. *Brown-Hunter*, 806 F.3d at 493. However, Defendant's argument for the incorrect standard to discredit a claimant's testimony does not require automatic reversal.

In a response to Defendant's motion for summary judgment, Plaintiff argued that the ALJ, by Defendant's admission, incorrectly applied the law to Plaintiff's case, which would require automatic reversal. ECF No. 16, *see also Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014) (holding a district court must reverse an ALJ's decision if the ALJ improperly applied the law, even if the ALJ's decision is supported by substantial evidence). Plaintiff misinterprets the ALJ's function. The ALJ serves as both finder of fact and adjudicator for social security claim, basing its final decision on the preponderance of the evidence. 20 C.F.R. § 404.953(a). The ALJ's decision-making process requires the ALJ to determine witness credibility, especially when there are "conflicts in the

testimony" which need resolution. *Treichler v. Comm'r Of Soc. Sec.*, 775 F.3d 1090, 1098 (9th Cir. 2014) (citing 42 U.S.C. § 405(g)). If an ALJ gives a claimant's testimony little or no weight, it must specifically and clearly explain its reasons for doing so to avoid arbitrarily discrediting claimant's testimony and to provide the district court an ample record to review on appeal. *Brown-Hunter*, 806 F.3d at 493. Then, the district court reviews whether or not the ALJ gave clear and convincing evidence to discredit the claimant's testimony, affirming the ALJ's decision if it is backed by substantial evidence. *Hill*, 698 F.3d at 1158. Nothing in the record indicates the ALJ improperly used the substantial evidence standard when discrediting Ms. Conner's testimony. The Court will not reverse the ALJ's decision because nothing on the record indicates the ALJ improperly applied legal standards.

Turning to the ALJ's decision, the ALJ found Ms. Conner's conditions could reasonably cause the symptoms of which she complained, satisfying the first prong of analysis. Tr. at 223. However, the ALJ found Ms. Conner's testimony "not entirely credible" concerning the intensity, persistence and limiting effects of her symptoms. Tr. at 223. The ALJ specifically found issues with the contradictions between Ms. Conner's subjective pain assessments and her daily activities, as well as the objective medical evidence from her treating physicians. Tr. at 223-229. Furthermore, the ALJ found Ms. Conner unwilling to seek additional treatment for her conditions. Tr. at 223-229.

As to the inconsistencies between her alleged symptoms and daily

1    activities, Ms. Conner first claimed in 2010 that her pain was a
2    "10/10, but worse with walking." Tr. at 193. In January 2015, Ms.
3    Conner saw Dr. Timothy Baldwin, and again rated her pain a 10/10. Tr.
4    at 463. Two days later, at the ALJ hearing, the ALJ asked her to rate
5    her pain again on a scale out of 10, where a 10/10 means "you
6    immediately go to the emergency room. You don't think twice about it.
7    That's where you go. That's 10 level." Tr. at 256. Ms. Conner
8    testified her pain was a 5 or 6 on average, and an 8 or 9 at its
9    worst. Tr. at 256. However, Ms. Conner maintained that she experienced
10   sharp, excruciating pain almost all the time. Tr. at 227 & 255.
11   Despite that assessment, Ms. Conner reported to Dr. Wing Chau that she
12   did basic household chores every day, including meal preparation and
13   cleanup, driving the kids to school, and walking the dogs. Tr. at 193.
14   In a "Function Report" dated March 2010, Ms. Conner stated she
15   vacuums, washes dishes, does laundry, cares for her children, and has
16   no issues with her personal care. Tr. at 145–153. Ms. Conner later
17   testified at the January 2014 hearing that she lifts an 11-pound
18   barbell and has the television on for four hours a day while she does
19   chores. Tr. at 263 & 265.

20       As to contradictions with the objective medical evidence, the
21   ALJ found multiple instances in which treating physicians found no
22   impaired movement in Ms. Conner's lower extremities, where her pain
23   occurs. In her 2010 visit with Dr. Chau, he noted Ms. Conner was able
24   to touch her toes, exhibited full knee extension, 5/5 strength in all
25   joints, no limp in her gait, and was able to stoop and squat, with
26   only his finding of "very limited" internal right hip rotation

supporting Ms. Conner's pain assessments. Tr. at 193–196. Four years later, Dr. Cheryl Hipolito, another treating physician, reported Ms. Conner had 5/5 motor strength in her lower extremities, a full range of hip motion, no restrictions in flexion, extension, or lateral bending, and no limiting factors in her active range of motion. Tr. at 226–227, 428, & 437. Ms. Conner stated at both the first and second administrative hearings that standing too long makes her leg stiff, keeping her from being mobile and active. Tr. at 55 ("I couldn't stand there . . . my leg gets stiff."); & 257 ("When I start walking . . . my knees start to lock up.").

As to Ms. Conner's unwillingness to seek treatment, The ALJ noted that Ms. Conner denied seeking treatment several times, citing financial inability. Tr. at 59 (testifying to lack of medical insurance in 2010); 225 (ALJ's decision); 423 (citing finances as barrier to treatment goals in late 2013); & 495 (reporting insufficient means to seek treatment from pain specialist in late 2010). In January 2014, Ms. Conner received medical insurance through the Affordable Care Act, which allowed her to see a pain specialist in February 2014. Tr. at 226 & 270. The ALJ found that Ms. Conner saw several different care providers, used diabetic and pain medications, and participated in physical therapy prior to receiving health insurance in January 2014. Tr. at 225.

The ALJ found Ms. Conner's testimony regarding the intensity, persistence, and limiting effect of her symptoms "not entirely credible." Tr. at 223. The ALJ discussed at length the contradictions between Ms. Conner's testimony and her daily activities, the objective

medical evidence, and unwillingness to seek treatment. Therefore, the Court finds that the ALJ provided clear and convincing reasons to discredit Ms. Conner, and did not err in finding her testimony regarding the intensity, persistence, and limiting effects of her symptoms "not entirely credible." Tr. at 223.

### 2. Ms. Conner's Treating Physicians' Opinions

There are three types of physicians: treating physicians, examining physicians, and nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Usually, treating physicians' opinions are given more weight than opinions from physicians who do not treat the claimant. *Id.* The ALJ must provide "clear and convincing" reasons for rejecting a treating or examining physician's opinion, and may not reject the opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* Ms. Conner argues the ALJ improperly gave little weight to the opinions of her two treating physicians, Dr. Cheryl Hipolito and Dr. Penny Stringer. The Court analyzes the ALJ's decision as to each medical expert.

### a. Dr. Cheryl Hipolito, M.D.

Ms. Conner argues the ALJ improperly gave little weight to Dr. Hipolito's opinion regarding the number of work days per month Ms. Conner would have to miss due to her impairments. Dr. Hipolito is one of Ms. Conner's treating physicians, meaning the ALJ should give her opinion great weight. *Lester*, 81 F.3d at 830. Before giving less weight to Dr. Hipolito's assessment, the ALJ needed to provide clear and convincing reasons supported by substantial evidence. *Id.* For the

ORDER GRANTING DEFENDANT'S SUMMARY-JUDGMENT MOTION AND DENYING
PLAINTIFF'S SUMMARY-JUDGMENT MOTION - 12

1  following reasons, the Court holds the ALJ assigned a proper amount of

2  weight to Dr. Hipolito's opinion.

3      Dr. Hipolito began treating Ms. Conner in September of 2013. Tr.

4  at 225. Dr. Hipolito discussed Ms. Conner's weight and diabetes with

5  her, and recommended she maintain a healthy diet and exercise every

6  day to reduce her weight. Tr. at 421. In July 2014, Ms. Conner

7  reported to Dr. Hipolito for a full examination. Tr. at 434. Dr.

8  Hipolito found Ms. Conner had a normal range of motion, normal muscle

9  strength, and regular stability in all extremities and no pain on

10 inspection, even in her hips. Tr. at 436. In August 2014, Dr. Hipolito

11 filled out a physical capacity questionnaire for Ms. Conner. Tr. at

12 413–414. In this questionnaire, Dr. Hipolito claimed Ms. Conner would

13 miss four or more work days per month due to her decreased range of

14 motion and chronic back pain. Tr. at 413–414. The ALJ found this

15 opinion "wholly inconsistent" with Dr. Hipolito's findings at the July

16 2014 examination, in which she noted Ms. Conner had no restrictions in

17 her active range of motion. Tr. at 227 & 436. Furthermore, Dr.

18 Hipolito cited Ms. Conner's walker as evidence of her inability to

19 work, but the walker was never prescribed by Dr. Hipolito, or any

20 physician. Tr. at 267 & 413. Lastly, Dr. Hipolito stated Ms. Conner's

21 limitations had existed since January of 2011, even though Dr.

22 Hipolito did not begin treating Ms. Conner until September 2013. Tr.

23 at 413.

24      After reviewing the ALJ's decisions, Dr. Hipolito's records, and

25 the parties' briefs, the Court holds the ALJ met its burden and

26 properly gave clear and convincing reasons to reject Dr. Hipolito's

testimony. While Dr. Hipolito did find Ms. Conner's obesity to be an issue in her mobility, she noted rather mild findings in her July 2014 examination, including a full range of motion in her lower extremities "without pain, crepitus, or evident instability." Tr. at 437. Citing "chronic back pain" as the issue that would keep Ms. Conner from working, Dr. Hipolito stated she based her opinion on the use of a walker and a decreased range of motion in her spine. Tr. at 413. In light of the fact that no doctor ever prescribed Ms. Conner a walker and the full range of motion Dr. Hipolito found just one month prior, Dr. Hipolito's opinion did not match her own objective medical evidence. Tr. at 267. Ms. Conner argues that Dr. Hipolito rightfully came to those conclusions by taking her subjective self-reports into account, but Ms. Conner's self-reports hold little weight due to her pattern of overstatement throughout the record, as explained earlier. Tr. at 227.

Contradictions between a physician's clinical notes and opinion is a clear and convincing reason to discredit that physician's opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Furthermore, "[a]n ALJ may reject a treat physician's opinion if it is based 'to a large extent' on claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)). Therefore, the ALJ met its burden by providing clear and convincing reasons supported by substantial evidence to give little weight to Dr. Hipolito's opinion. Accordingly, the ALJ did not improperly give the opinion insufficient weight.

b.    **Dr. Penny Stringer, M.D.**

Ms. Conner argues the ALJ also improperly rejected Dr. Stringer's opinion regarding the number of work days Ms. Conner would miss per month. The ALJ found there was no evidence Dr. Stringer ever treated Ms. Conner, but she did fill out a questionnaire following a 2011 appointment, similar to the one submitted by Dr. Hipolito in 2014. Tr. at 209–210 & 225. For the following reasons, the Court finds the ALJ properly rejected Dr. Stringer's opinion.

In Ms. Conner's first appeal to this Court, she made the same claim: The ALJ improperly rejected Dr. Stringer's opinion. Tr. at 311. The Honorable Fred Van Sickle ruled that Dr. Stringer's opinion was rightfully rejected by the ALJ because of the lack of citation to any medical evidence to support her conclusion, as well as contradictions to Ms. Conner's other treating physicians' opinions. *Conner v. Colvin*, No. CV–13–5033–FVS, 2015 WL 2094345, at *5–6 (E.D. Wash. May 20, 2014) (citing *Bayliss*, 427 F.3d at 1216; & 20 C.F.R. § 404.1527(c)(4)). No evidence in the record suggests Ms. Conner visited Dr. Stringer following her appeal, and Dr. Stringer has not provided new conclusions or amended her previous findings or opinions.

Generally, a court is "precluded from reconsidering an issue that has already been decided by the same court" in the same case. *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993) (citing *Milgard Tempering Inc. v. Selas Corp. of America*, 902 f.2d 703, 715 (9th Cir. 1990)). Because nothing about Dr. Stringer's opinion has changed since the ALJ first rightfully rejected it, the Court finds the ALJ properly rejected Dr. Stringer's opinion.

### 3.    Remand for Immediate Award

The Court did not find any reversible error committed by the ALJ. Therefore, remand with instructions to grant immediate award to Ms. Conner would be improper.

**F.    Conclusion**

In summary, the Court affirms the ALJ's decision that Ms. Conner is not disabled defined under the Social Security Act. Therefore, the Court grants Defendant's summary-judgment motion and denies Plaintiff's summary-judgment motion.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED.**

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED.**

3.    **JUDGMENT** is to be entered in the Commissioner's favor.

4.    The case shall be **CLOSED.**

**IT IS SO ORDERED.**    The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this  28th  day of July 2016.

s/Edward F. Shea
EDWARD F. SHEA
Senior United States District Judge

Q:\EFS\Civil\2015\5051.socsec.lc2.docx

ORDER GRANTING DEFENDANT'S SUMMARY-JUDGMENT MOTION AND DENYING PLAINTIFF'S SUMMARY-JUDGMENT MOTION - 16